THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **RAYMOND STINDE,**<br><br>    **Plaintiff,**<br><br>v.<br><br>**SARAH C. WOOLEY, SANDY WALKER, JOSHUA SCHOENBECK, ANTHONY WILLS, KELLY PIERCE, DEBBIE KNAUER, ROB JEFFREYS, SGT. ROYSTER, C/O EDWARDS, MELVIN HINTON, ANTHONY JONES, MAJOR JOHN DOE #649, JOHN DOE #517, DIETARY JOHN/JANE DOES, and SGT. HEPP,**<br><br>    **Defendants.** | Case No. 3:23-cv-02197-GCS |

### MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

    Plaintiff Raymond Stinde, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Stinde alleges defendants were deliberately indifferent to his mental health needs and his conditions of confinement, as well as subjected him to excessive force.

    The case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A.[1] Under Section 1915A, the Court is required to screen prisoner

---

[1]     The Court has jurisdiction to screen the Complaint due to Plaintiff's consent to the full jurisdiction of a Magistrate Judge (Doc. 6), and the limited consent to the exercise of Magistrate

complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

## THE COMPLAINT

In his Complaint, Stinde alleges that he suffers from a serious mental illness ("SMI") and was designated as such by a psychiatrist on October 11, 2020. (Doc. 1, p. 56). In October 2020, Stinde began hearing voices directing him to do things that he did not want to do. *Id*. at p. 9. Stinde labels this voice as "the Devil" and fears the voice. On October 23, 2020, Stinde fashioned two knives to protect himself from the Devil. *Id*. He also contacted internal affairs officer Sarah C. Wooley to turn the knives in and request help. Wooley interviewed Stinde, but laughed at him when he told her he was hearing voices. *Id*. He presented her with the knives, but Wooley instructed him to implicate another inmate as the individual who provided Stinde with the weapons because the inmate was a vice lord. *Id*. She threatened Stinde with a disciplinary ticket if he did not implicate the vice lord member. *Id*. Stinde refused and let "the Devil" take over, which caused him to be placed in a holding cell. *Id*. at p. 9-10. Wooley refused to declare a mental health crisis with respect to Stinde or provide him with any mental health services. *Id*. at p. 10.

---

Judge jurisdiction as set forth in the Memoranda of Understanding between this Court, the IDOC, and Wexford Health Sources, Inc.

After being placed in the holding cell, Stinde refused requests to strip for a search and began harming himself. (Doc. 1, p. 10). A tactical team was called to his cell. Stinde tried to cut his wrists but was maced by the tactical team. *Id*. Stinde was examined by medical and mental health staff and placed on crisis watch. *Id*. The next day, Wooley returned to his cell, but Stinde refused to leave his cell or speak to her. *Id*. Later that day, he received a disciplinary report for dangerous contraband. *Id*. Stinde alleges that Wooley improperly disregarded his serious mental illness and request for crisis watch. She also failed to note his mental illness on his disciplinary report and, instead, checked the box indicating that Stinde did not have a mental illness. *Id*. at p. 10, 23.

Stinde remained on crisis watch from October 23, 2020, until November 16, 2020. (Doc. 1, p. 10). He received a second ticket for dangerous contraband after he fashioned another weapon while on crisis watch. *Id*. at p. 11-12. Stinde alleges that the shift commanders who were on duty when both disciplinary tickets were issued failed to follow Administrative Directive 504, which requires that mental health management be contacted any time a SMI offender receives a disciplinary ticket which could result in segregation. *Id*. at p. 15. Stinde identifies the shift commanders during the relevant time as John Doe #1, Badge #517 and John Doe #2, Badge #649. *Id*.

On November 3, 2020, Stinde went before the adjustment committee on the dangerous contraband ticket. (Doc. 1, p. 11). Prior to the hearing, Stinde contends that the hearing investigator, Sandy Walker, was required to review the disciplinary report and correct any errors in the report. *Id*. at p. 10-11. Stinde alleges that Walker failed to correct his serious mental illness status on the report, despite Stinde being on crisis watch at the

time of the disciplinary hearing. *Id*. at p. 11. He also alleges Warden Anthony Wills failed to maintain a list of SMI inmates as required by prison regulations. *Id*. at p. 15. Disciplinary hearing officers Lieutenant Schoenbeck and Anthony B. Jones also knew that Stinde was on crisis watch at the time of the hearing. *Id*. at p. 11. On November 18, 2020, Stinde refused to attend his disciplinary hearing because he was not in the right mental condition due to the voices in his head. *Id*. He was found guilty of both tickets and received three months C grade, 1 year in segregation, and 3 months commissary restrictions for each disciplinary report. *Id*. The hearing officers noted that Stinde had been on crisis watch but was released per mental health professionals at the prison. *Id*. at p. 24. Stinde alleges that the officers failed to consider his mental health when they sentenced him to 1 year in segregation. *Id*. at p. 12. He also alleges that other SMI inmates received far shorter segregation sentences than he did for similar charges. *Id*. at p. 14.

Stinde submitted a grievance regarding the tickets. Grievance officer Kelly Pierce remanded the second disciplinary report back to the hearing officers for rehearing because the officers failed to consider Stinde's SMI status. (Doc. 1, p. 33). She refused to remand the ticket issued by Wooley because she contended that Stinde was not on crisis watch at the time the ticket was issued. *Id*. Pierce noted that Stinde entered crisis watch on October 23, 2020. *Id*. at p. 23. The disciplinary ticket from Wooley, however, appeared to be issued on October 24, 2020. *Id*. at p. 23-24.

On February 23, 2021, Stinde had another hearing on the second disciplinary ticket, and his discipline was reduced to 45 days in segregation based on recommendations from mental health staff. (Doc. 1, p. 34). Stinde appealed his grievance

regarding the ticket issued by Wooley to the Administrative Review Board ("ARB"). *Id.* at p. 13. He also wrote another grievance about the October disciplinary report issued by Wooley. *Id.* at p. 13, 36. Pierce deemed his grievance moot as it had already been addressed. *Id.* at p. 38. Pierce directed Stinde to submit a request for a cut in segregation time. *Id.* ARB member Sherry Benton denied his original grievance. *Id.* at p. 40. Debbie Knauer denied his second grievance. *Id.* at p. 41. Stinde wrote letters to IDOC Director Jeffreys, Melvin Hinton, and Warden Anthony Wills, but he never received a response. *Id.* at p. 14.

Stinde remained in segregation on the disciplinary ticket issued by Wooley. On May 4, 2021, Stinde "had words" with Sergeant ("Sgt.") Royster, and Royster directed a correctional officer to shakedown his cell and confiscate a broken television. (Doc. 1, p. 16). He also ordered Stinde be moved to a cell with a steal door as opposed to bars. *Id.* Stinde was transferred to Cell 414, which Stinde alleges was "in deplorable condition." *Id.*

Stinde asked for a crisis team, but officers refused. (Doc. 1, p. 16). Stinde requested a crisis team from correctional officer ("C/O") Edwards, but he also refused. He directed Stinde to remove his hands from the chuckhole or his hands would be broken. *Id.* Royster repeated the threat. Stinde again requested a crisis team, and C/O Edwards slammed the chuckhole door down on Stinde's hands. *Id.* Sgt. Royster directed another officer to hold Stinde's hand and Royster twisted his fingers. Stinde believes that Royster was trying to break his fingers or further injure fingers already broken by the chuckhole. *Id.* Stinde

requested medical care, but the officers refused. *Id*. at p. 17. Stinde continued to request care in the days following the incident, but his requests went unanswered. *Id*.

On May 9, 2021, Stinde finally saw a nurse who provided him with bandages and ointment but no pain medication because the healthcare unit was out of pain medication. (Doc. 1, p. 17). On May 13, 2021, he received Motrin for his hand. *Id*.

While in Cell 414, Stinde alleges that he was subjected to rust on his bed frame and water in his cell from leaks in the pipes. (Doc. 1, p. 17). There was mold in the cell and peeling paint. *Id*. at p. 17-18. He wrote Anthony Wills about his injuries from the use of force, but he never received a response. *Id*. at p. 18.

On November 2, 2021, he received a meal tray but noted pieces of rat or mouse in the tray. (Doc. 1, p. 18). He informed a correctional officer who noted there were other complaints of contamination. *Id*. Later that evening, he spoke to Sergeant Hepp about the rat pieces in his meal. Hepp acknowledged that he was aware of the complaints and that the matter was being investigated. *Id*. Stinde showed Hepp the rat parts and requested crisis and medical staff. Stinde felt sick and traumatized. He started vomiting and suffered from diarrhea. *Id*. Stinde suffered from nausea and stomach pains for a week after the incident. *Id*. He wrote grievances which were denied as untimely. *Id*.

### PRELIMINARY DISMISSALS

Stinde fails to state a claim against Anthony Wills, Kelly Pierce, Melvin Hinton, Debbie Knauer, and Rob Jeffreys. He alleges that these officials denied his grievances, but the simple denial of a grievance does not amount to deliberate indifference. *See George v. Smith*, 507 F.3d 605, 609-610 (7th Cir. 2007). *See also Owens v. Hinsley*, 635 F.3d 950, 953

(7th Cir. 2011) (noting that "the alleged mishandling of [a prisoner's] grievance by persons who otherwise did not cause or participate in the underlying conduct states no claim."). Stinde alleges that he wrote letters to several officials, including Rob Jeffreys and Melvin Hinton, but there is no indication that they received those letters or had personal knowledge of his mental health status. Thus, the claims against Wills, Pierce, Knauer, Hinton, and Jeffreys are **DISMISSED without prejudice**.

Stinde also fails to state a First Amendment retaliation claim against Royster and Edwards. Stinde alleges that Royster and Edwards transferred him to a less desirable cell because Stinde and Royster "had words." (Doc. 1, p. 16). But Stinde fails to point to any First Amendment protected conduct which led to the retaliation. He merely states that he had words which is not sufficient. *See Bridges v. Gilbert*, 557 F.3d 541, 551-552 (7th Cir. 2009). *See also Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (noting that the filing of a grievance is protected conduct). Thus, Stinde's retaliation claim is **DISMISSED without prejudice**.

Stinde likewise fails to state a claim against John Doe #1 and John Doe #2 shift commanders. Stinde alleges that according to administrative directives, the shift commanders are supposed to notify mental health management if an SMI offender receives a disciplinary ticket. He alleges these shift commanders failed to contact mental health staff about his ticket. But the violation of an administrative code does not amount to a constitutional violation, and there are no allegations to suggest that these shift commanders acted with deliberate indifference to Stinde's mental health needs. *See, e.g., Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) (noting that "[Section] 1983 protects

plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations and . . . practices."). Thus, John Does #'s 1 and 2 are **DISMISSED without prejudice**.

Finally, although he lists John/Jane Doe Dietary Supervisors in the caption of his Complaint, Stinde fails to include any allegations against them in his statement of claim. There are no allegations to suggest that they were aware that Stinde's food was contaminated nor is there any indication that he spoke to any of the supervisors. Further, they cannot be liable simply because of their positions as supervisors. Thus, the John/Jane Does are also **DISMISSED without prejudice**.

## DISCUSSION

Based on the allegations in the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts:

| | |
|---|---|
| **Count 1:** | **Fourteenth Amendment due process claim against Sarah Wooley, Sandy Walker, Joshua Schoenbeck, and Anthony Jones for imposing disciplinary sanctions on Stinde without contacting mental health.** |
| **Count 2:** | **Eighth Amendment deliberate indifference claim against Sarah Wooley, Sandy Walker, Joshua Schoenbeck, and Anthony Jones for imposing disciplinary sanctions on Stinde without contacting mental health and failing to provide him with mental health care.** |
| **Count 3:** | **Eighth Amendment excessive force claim against Royster and Edwards for slamming Stinde's hands in the chuckhole.** |
| **Count 4:** | **Eighth Amendment deliberate indifference to conditions of confinement claim against Royster and Edwards for placing Stinde in a cell with rust, water, and peeling paint.** |

        **Count 5:**        **Eighth Amendment deliberate indifference to medical needs claim against Royster and Edwards for failing to provide Stinde with medical care after injuring his hands.**

        **Count 6:**        **Eighth Amendment deliberate indifference to conditions of confinement and medical needs claim against Hepp for failing to respond to the issues with Stinde's meal tray and failing to obtain medical care for Stinde.**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[2]

**Counts 1 and 2**

In Counts 1 and 2, Stinde alleges that Defendants Wooley, Walker, Schoenbeck, and Anthony Jones acted with deliberate indifference when they failed to take note of his mental illness in disciplining him for possession of weapons. He alleges that Defendants should have noted his SMI status and taken his status into consideration when determining the length of his discipline. He also alleges that the mental health management office should have been contacted to provide recommendations.

---

[2]    *See, e.g.*, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (noting that an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

To the extent Stinde seeks to raise a due process claim, he fails to state one.[3] When an inmate raises a procedural due process claim, the Court undertakes a two-part analysis. *See Isby v. Brown,* 856 F.3d 508, 524 (7th Cir. 2017). The Court first evaluates whether the prisoner was deprived of a protected liberty interest, and then second, evaluates whether the process he was afforded was constitutionally deficient. *Id.* (citing *Hess v. Board of Trustees of Southern Illinois University*, 839 F.3d 668, 673 (7th Cir. 2016)). Due process safeguards that are associated with prison disciplinary hearings include: (1) advance written notice of the charges; (2) the opportunity to appear before an impartial hearing body to contest the charges; (3) the opportunity to call witnesses and present documentary evidence as a defense (if prison safety allows and subject to the discretion of correctional officers); and (4) a written statement summarizing the reasons for the discipline imposed. *See Wolff v. McDonnell*, 418 U.S. 539, 563-569 (1974). In addition, the decision of the adjustment committee must be supported by "some evidence." *Scruggs v. Jordan,* 485 F.3d 934, 941 (7th Cir. 2007).

Although Stinde takes issue with the fact that his mental health status was not considered during the disciplinary hearing, he fails to allege that this violated his due process rights. Although the failure may have violated prison requirements or administrative directives, there is no indication that his due process rights were violated.

---

[3] Stinde's Complaint does not specifically state that he is raising a due process claim. He labels his claim as a deliberate indifference/cruel and unusual punishment claim. (Doc. 1, p. 9). But he also alleges that defendants should have considered his mental illness before issuing discipline which suggests that they failed to provide him with sufficient procedural protections during his disciplinary hearing.

*See, e.g.*, *James v. Pfister*, No. 16-4259, 708 Fed. Appx. 876, 879 (7th Cir. Aug. 30, 2017) (stating that "[m]entally ill inmates are not constitutionally guaranteed heightened procedural protections . . . ."). Because Stinde fails to point to any due process protections that were violated, his claim in Count 1 is **DISMISSED without prejudice**.

Stinde does, however, state a claim in Count 2 for deliberate indifference. He alleges that Wooley failed to obtain medical and mental health care after Stinde requested care on October 23, 2020. *See Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir. 2001). He also alleges that the hearing officials, including Walker, Schoenbeck, and Jones, failed to note his mental health status, failed to notify mental health staff, and then placed him in segregation for a year which amplified his mental illness. Thus, Stinde states a claim in Count 2 against Wooley, Walker, Schoenbeck, and Jones.

**Counts 3-6**

Stinde's claims in Counts 3-5 regarding his conditions in Cell 414, the excessive force by Royster and Edwards, and the deliberate indifference to his need for medical care after the use of force are unrelated to Stinde's claims in Counts 1 and 2. Accordingly, consistent with *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) and Federal Rules of Civil Procedure 18 and 20, the Court will sever Counts 3-5 into a separate case and will open a new case with a newly assigned case number. Similarly, Count 6 regarding the contaminated meal Stinde received on November 2, 2021, is unrelated to any of Stinde's other claims. Thus, Count 6 against Hepp will also be severed into a separate case with a newly assigned case number.

**PENDING MOTIONS**

As to Stinde's motion for counsel (Doc. 10), he states that he wrote three law firms asking for representation and that he will have difficulties litigating this case due to his mental illness. Given the early stage of the litigation process, however, it is difficult to accurately evaluate the need for the assistance of counsel. *See, e.g.*, *Kadamovas v. Stevens*, 706 F.3d 843, 845 (7th Cir. 2013) (noting that "until the defendants respond to the complaint, the plaintiff's need for assistance of counsel . . . cannot be gauged."). Further, the parties have yet to be served, and there is nothing pending that would require a response from Stinde. Thus, his motion for counsel is **DENIED**.

**DISPOSITION**

For the reasons stated above, Counts 3-5 and Count 6 are severed into two new cases. In each new case, the Clerk of Court is **DIRECTED** to file the following documents:

- This Memorandum and Order;
- The Complaint (Doc 1); the
- The motion to proceed *in forma pauperis* (Doc. 2).

The only remaining claims in this case are Counts 1-2. Count 1 is **DISMISSED** without prejudice for failure to state a claim, but Count 2 shall proceed against Sarah Wooley, Sandy Walker, Joshua Schoenbeck, and Anthony Jones. All other claims and Defendants are **DISMISSED without prejudice**.

The Clerk of Court shall prepare for Defendants Sarah Wooley, Sandy Walker, Joshua Schoenbeck, and Anthony Jones: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk

is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to the defendants' place of employment as identified by Stinde. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Stinde, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

If judgment is rendered against Stinde, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Stinde is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court

will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. PROC. 41(b).

**IT IS SO ORDERED.**

**DATED:  January 16, 2024.**

Digitally signed by Judge Sison
Date: 2024.01.16 15:43:42 -06'00'

**GILBERT C. SISON**
**United States Magistrate Judge**

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**